**Schimpf Estate**

*Joseph T. Coghlan, Jr.*, for accountant.

*George H. Nofer* and *Ralph G. Wellington of Schnader, Harrison, Segal & Lewis*, for defendants.

*Austin M. Lee*, for claimant.

SILVERSTEIN, J., April 14, 1972.—By adjudication dated August 19, 1971, I awarded the ascertained balances, in accordance with the terms of the will and codicil of testatrix, except with respect to the one-fifth residue bequeathed to Fifth Reformed Church, Cedar Street and Susquehanna Avenue, Philadelphia. By the aforesaid adjudication, this one-fifth was awarded to "H. James Sautter for further accounting and administration." The fund so awarded is the fund presently accounted for.

Testatrix' will is dated February 3, 1961, and the codicil thereto is dated September 20, 1963. The Fifth Reformed Church was in existence at the dates of the will and codicil, but was out of existence at the testatrix' death on December 16, 1969.

The problem presented for my consideration is which of the three claimants, i.e., Classis of Philadelphia, the Reformed Church, Willow Grove (which supports the claim of the Classis), and Talmage Memorial Reformed Church is the proper recipient of the bequest under the will of Minnie Schimpf.

The primary effort in resolving these conflicting claims is to ascertain, if possible, testatrix' intent regarding the disposition of her benevolent gift.

The gift she desired was "Sixth: I give and bequeath the proceeds of any such sales of real estate, also all the rest, residue and remainder of my estate, as follows: . . .

"One-fifth thereof, to Fifth Reformed Church, Cedar Street and Susquehanna Avenue, Philadelphia . . ."

The Fifth Reformed Church was officially dissolved in the Court of Common Pleas, Philadelphia County, on December 19, 1967, and the Classis has succeeded to its property rights, both by virtue of the laws of the Commonwealth and the bylaws and rules of order

of the General Synod of the Reformed Church in America.

The testimony reveals that at the time of its dissolution, the Fifth Reformed Church was one of several member churches, as is the Talmage Reformed Church, in the Dutch Reformed Church. These member churches are under a supervisory body known as the Classis. The Classis, in turn, is under a particular synod, and above that is the general synod.

The Classis is basically a representative body composed of the pastors and an elder from each of the member churches. The officers of the Classis consist of a president, an executive committee and a clerk, all of whom serve without salary, and hold office on a rotating basis, except the clerk. All have other major occupations.

The Classis can approve or disapprove the call of a minister to a particular church, and can dissolve a church (subject to appeal) and can approve or disapprove mergers of member churches. Its only source of funds is through its power to assess member churches and the assets it receives upon dissolution of member churches.

The Classis, through agents, encourages activities in 'men's work, youth work, women's work, evangelism, etc. These activities are carried on exclusively in the facilities of member churches and working only through individual church members.

The Fifth Reformed Church, at the time of its dissolution, was located in the Kensington area of Philadelphia, and the possibility of merging it with other churches in the same area was not deemed practicable by the Classis. The assets it received by reason of the dissolution were authorized in 1968 or 1969 to be used to support inter-denominational urban ministries.

However, before this could be implemented, the organization was disbanded and a committee of the Classis is presently studying the use of these funds. No disposition has been made thereof.

The Talmage Memorial Reformed Church was founded in 1891 and the Fourth Reformed Church of Philadelphia was founded in 1827, both located in the Roxborough area of Philadelphia, and both part of the Reformed Church in America. In 1969, under authorization from the Classis, they merged into one congregation, presently known as the Talmage Memorial Reformed Church, and they operate as a worshipping congregation with a single ministry at the location of Talmage. The real property of the Fourth has been sold. The merged church is presently the only reformed church within the limits of the City of Philadelphia.

It further appears that Mr. and Mrs. William G. Schwab (Mrs. Schwab, whose maiden name was Schimpf and a first cousin of testatrix' husband) came from the Fifth Reformed Church to the Fourth Reformed Church in 1918 and worshipped there until the death of the survivor in 1956. Their three children also joined in 1922 and 1923.

It also appears that a former member of the Fifth Reformed Church attends the Willow Grove Church and two families (one, a nephew of testatrix) attend the North and South Hampton Reformed Church.

The Classis argues that, as the successor to all assets of the Fifth Reformed Church, and by virtue of both ecclesiastical and statutory law, the clear import of the law is that it is the proper recipient of the legacy.

It further argues that it is also functionally in the most favorable position to implement the charitable intent of testatrix.

It is fundamental that the dispositive portions of

a will are ambulatory and remains so until the death of testator. Therefore, at the time of the dissolution of the Fifth Reformed Church, the only interest involved was, at most, in the nature of an expectancy, which cannot now be performed with the same degree of exactness, had not the Fifth Reformed Church been dissolved.

It has been clearly established that a charitable institution, beneficiary of a testamentary gift, having been dissolved in the lifetime of testator, creates appropriate situation for the application of cy pres: Turner Estate, 28 D. & C. 2d 251 (1962); Brooks Estate, 2 Fiduc. Rep. 58 (1952).

" 'The meaning of the doctrine of cy pres, as received by us, is, that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable' ": Curran's Estate 310 Pa. 434 (1933).

The doctrine of cy pres is one of approximation. It cannot be approached as if it were in the nature of an exact science. Each case is sui generis and depends upon its own attending circumstances.

In applying the cy pres doctrine, the court exercises its discretion in such a manner as to award the fund to an institution, whose services it believes most nearly approximate the intention of the donor: Women's Homoeopathic Hospital of Philadelphia Case, 393 Pa. 313 (1958); Restatement, Trusts §399; Estates Act of April 24, 1947, P. L. 100, sec. 10.

The gift in question was to a church. A church is an active worshipping congregation with a ministry.

". . . [A]n indefinite number of persons, of one or both sexes, who have made a public confession of religion, and who are associated together by a cove-

nant of church fellowship, for the purpose of celebrating the sacrament, and watching over the spiritual welfare of each other": 23 R.C.L. 421.

On the other hand, the Classis appears to be more of form than substance. It has only one part time employe. It conducts all activities through its member churches and their members. Its source of funds is extremely limited.

Under the circumstances of this case, an award to Talmage Memorial Reformed Church most nearly approximates testatrix' intent. Accordingly, the remaining one-fifth of the residue of the Estate of Minnie Schimpf, a/k/a Wilhelmina Schimpf, as appears in the supplement to the first and final account, is awarded to the Talmage Memorial Reformed Church.

Leave is granted to the accountant to make all necessary transfers and assignments.

A schedule of distribution, certified by counsel for the accountant to be correct and in accordance with this adjudication and the adjudication dated August 19, 1971, approved by all parties in interest, will be submitted to the auditing judge. The schedule, when approved and annexed thereto will form part thereof.

And now, April 14, 1972, the account is confirmed nisi.